# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

AIRPRO DIAGNOSTICS, LLC, *a Florida limited liability company*,

      Plaintiff,

v.

OPUS IVS, INC., *a Delaware corporation* and AUTOENGINUITY LLC, *an Arizona limited liability company,*

      Defendants.

And

OPUS IVS, INC. and AUTOENGINUITY LLC,

      Defendants/Counter-Plaintiffs

v.

AIRPRO DIAGNOSTICS, LLC,

      Plaintiff/Counter-Defendant.

Case No.: 3:24-cv-01330-TJC-LLL

_____/

## MOTION TO DISMISS COUNTERCLAIM, OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT, AND INCORPORATED MEMORANDUM OF LAW

Counter-Defendant, AirPro Diagnostics, LLC ("Airpro" or "Plaintiff"), by and through its undersigned counsel, and pursuant to Rules 12(b)(6), 12(e) and 13(a) of the Federal Rules of Civil Procedure, hereby moves to dismiss the Counterclaim (Doc. 24) filed by Defendants/Counter-Plaintiffs, Opus IVS, Inc. and AutoEnginuity LLC

(collectively "Defendants"), or in the alternative, moves for a more definite statement as to the Counterclaim (Doc. 24).   In support of this Motion, AirPro states as follows:

## BACKGROUND

AirPro instituted this action on December 20, 2024,[1] and brought claims against Defendants for breach of contract, breach of third-party beneficiary contract, misappropriation of trade secrets, injunctive relief, fraud and a declaratory judgment. (Doc. 5).  In response, on December 27, 2024, Defendants filed a Motion to Dismiss arguing that AirPro's action was an improper attempt to split the causes of action and that the instant action should be dismissed based upon a lawsuit pending in the Eastern District of Michigan (Case No. 2:22-cv-12969, U.S. District Court for the Eastern District of Michigan (the "Michigan Action")).   (Doc. 9).   AirPro responded in opposition to Defendants' Motion to Dismiss, arguing that the instant lawsuit was brought in Florida because Defendants demanded the lawsuit be brought in Florida based upon a mandatory venue provision.  (Doc. 16).

The Court denied Defendants' Motion to Dismiss, because Defendants previously took the position in the Michigan Action that AirPro was contractually required to bring its claim against Defendants in Florida.  (Doc. 20).   Thereafter, Defendants filed the Answer, Affirmative Defenses, and Counterclaim.  (Doc. 24).

Defendants' Counterclaim (commonly referred to throughout this Motion as the "Florida Counterclaim") alleges the following causes of action:  (1) Copyright

---

[1] This Action was originally filed in state court and was removed to this Court on December 20, 2024.

Infringement; (2) Unjust Enrichment; (3) Unfair Competition; and (4) Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). (Doc. 24).

## PRELIMINARY STATEMENT/RELIEF REQUESTED

The Florida Counterclaim should be dismissed because it suffers from the same fatal flaw that Defendants accused AirPro of committing (*See* Doc. 9), which is improperly splitting of the claims. Specifically, Defendants have already filed a Counterclaim alleging unfair competition by AirPro in the Michigan Action[2] and the allegations of unfair competition are the basis for each of the four claims brought in the Florida Counterclaim. A true and accurate copy of the Counterclaim filed in the Michigan Action is attached hereto as **Exhibit A**[3] (the "Michigan Counterclaim"). *See infra* Part I(B).

A large portion of the facts alleged by Defendants in the Michigan Counterclaim, are identical or substantially similar[4] to the facts raised in the Florida Counterclaim.[5] For example, each of the causes of action in the Florida Counterclaim are reliant upon alleged unfair competition and reliant upon facts that were already alleged in Defendants' Michigan Counterclaim, which was filed on October 12, 2023.

---

[2] Defendants' second count in the Michigan Counterclaim is for unfair competition. (Ex. A, pp. 36-37).

[3] The Court may take judicial notice of public records, such as court filings. *See Universal Express, Inc. v. U.S. SEC*, 177 Fed. App'x 52, 53 (11th Cir. 2006); *Omnia Medical, LLC v. PainTEQ, LLC*, No. 8:22-cv-145-VMC-TGW, 2022 WL 3139241 at *2 (M.D. Fla. Aug. 5, 2022). Additionally, the Court may take judicial notice of Defendants' Counterclaim in the Michigan Action without converting this Motion to Dismiss into a motion for summary judgment. *See Horne v. Potter*, 392 Fed. App'x 800, 802 (11th Cir. 2010); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

[4] See the chart attached hereto as Exhibit B.

[5] See *infra* Parts I(B) and I(C).

As such, those claims were compulsory and should have been brought in the Michigan Action. *See infra* Part I(C). It is improper for Defendants to try to raise those claims now, as those claims could have been brought in the Michigan Action. For these reasons alone, Defendants' Counterclaim (Doc. 24) should be dismissed.

To the extent the Court declines to dismiss the Counterclaim for improper claims splitting, the Counterclaim is still subject to dismissal because it constitutes an improper shotgun pleading. *See infra* Part I(D).

Finally, to the extent the Court declines to dismiss the Counterclaim for any of the foregoing reasons, it is respectfully submitted that in the alternative, and as a minimum, Defendants should be required to plead a more definite statement and identify the facts and relief that relate to each cause of action. *See infra* Part II.

## ARGUMENT

### I.  Motion to Dismiss.

#### A.  Legal Standard for a Motion to Dismiss.

In ruling on a motion to dismiss, the Court is required to accept the factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Ambrose v. St. Johns County School Board*, 664 F. Supp. 3d 1322, 1325 (M.D. Fla. 2023). "Nonetheless, the plaintiff must still meet some minimal pleadings requirements. Indeed, while specific facts are not necessary, the [pleading] should give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* at 1326 (citations omitted) (internal quotation marks omitted).

"When a complaint does not comply with minimum pleading requirements or otherwise 'fails to state a claim to relief that is plausible on its face,' the defendant may seek dismissal of the complaint under Rule 12(b)(6)." *Pollitz v. Halifax Health*, No. 6:15-CV-450-ORL-37, 2015 WL 4987732 at *4 (M.D. Fla. Aug. 19, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678-79 (2009)). "When considering a Rule 12(b)(6) motion, courts must limit their consideration to the complaint, its attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007)).

"While 'information and belief' pleading can sometimes survive a motion to dismiss, a plaintiff must alleged specific facts sufficient to support a claim. Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *United Am. Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1261 n. 21 (S.D. Fla. 2021) (internal citations omitted) (internal quotation marks omitted).

**B.    Defendants' Counterclaim should be dismissed because Defendants are seeking to improperly split the causes of action.**

It is respectfully submitted that Defendants' Counterclaim is barred by the "rule against splitting" causes of action. Defendants' Counterclaim is based upon facts that Defendants have already alleged to support their Michigan Counterclaim. While claim splitting is commonly seen with complaints, claim splitting also applies to

counterclaims. *See Lottery.com, Inc. v. Brier*, No. 8:23-cv-2594-KKM-TGW, 2024 WL 4905483 at *4 (M.D. Fla. June 11, 2024). Additionally, although Defendants originally recognized that their claims were compulsory in the Michigan Action, Defendants now seek to re-allege their counterclaims in this case, apparently following the adage that "the best defense is a good offense."

      **i.**     **Defendants' Counterclaim in this Action is based on <u>the same alleged <br> circumstances and wrongful acts</u> that give rise to Defendants' Counterclaim in <br> the Michigan Action.**

"The rule against splitting causes of action makes it incumbent upon [a party] to raise all available claims involving the same circumstances in one action." *Dept. of Agric. & Consumer Servs. v. Mid–Florida Growers*, 570 So. 2d 892, 901 (Fla. 1990). "The rule against splitting causes of actions is designed to prevent a multiplicity of suits[,]" *Brody Constr., Inc. v. Fabri–Built Structures, Inc.*, 322 So. 2d 61, 63 (Fla. 4th DCA 1975), and "is predicated on the following basic policy considerations: (1) finality in court cases promotes stability in the law; (2) multiple lawsuits arising out of a single incident are costly to litigants and an inefficient use of judicial resources; and (3) multiple lawsuits cause substantial delay in the final resolution of disputes." *Mid–Florida Growers*, 570 So. 2d at 901. The Florida Supreme Court has provided (albeit in a review of a summary judgment ruling):

> The law does not permit the owner of a single or entire cause of action or an entire indivisible demand to divide or split that cause of action so as to make it the subject of several actions, without the consent of the defendant. All damages sustained or accruing to one as a result of a single wrongful act must be claimed or recovered in one action or not at all. The law presumes that a single cause of action

> can be tried and determined in one suit, and will not permit the plaintiff to maintain more than one action against the same party for the same cause. This rule is founded on the plainest and most substantial justice—namely, that litigation should have an end, and that no person should be unnecessarily harassed with a multiplicity of suits.

*Mims v. Reid*, 98 So. 2d 498, 500-01 (Fla. 1957).

Florida's rule against splitting bars claims that are asserted against (1) the same defendants (2) arising from the same "circumstances" or "wrongful act" at issue in the prior-filed action. *See Alvarez v. Nestor Salesco, Inc.*, 695 So. 2d 941, 942 (Fla. 4th DCA 1997) ("The rule . . . does not apply where the claims involve different defendants."); *Mid–Florida Growers*, 570 So. 2d at 901 ("The rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action.").

Here, Defendants' Counterclaim violates the rule against claim splitting because the Counterclaim is based upon the same circumstances and alleged wrongful acts as alleged in the Michigan Counterclaim. Specifically, over 50 allegations in the Florida Counterclaim are identical, or substantially similar, to the allegations in the Michigan Counterclaim.

Attached hereto as **<u>Exhibit B</u>** is a chart identifying the specific paragraphs in the Michigan Counterclaim and the Florida Counterclaim that are either the same or substantially similar.

For example, in the Florida Counterclaim, Defendants allege in paragraph 102 the following:

> 102.    Nevertheless, AirPro inaccurately and unlawfully advertised and marketed the Giotto Software as an OEM automotive diagnostic software in an effort to successfully mislead customers and unfairly compete with Opus.

(Doc. 24, p. 44, ¶102).    In the Michigan Counterclaim, Defendants alleged in paragraph 31, as follows:

> 31.    Nevertheless, AirPro inaccurately and unlawfully advertised and marketed the Giotto Product as an OEM scan tool software in an effort to, on information and belief, successfully mislead customers and unfairly compete with Opus.

(Ex. A, p. 24, ¶31).

As another example, in the Florida Counterclaim, Defendants allege in paragraph 139 the following:

> 139.    AirPro's public statements regarding the Giotto Software and other aftermarket software were highly misleading to the marketplace and AirPro's customers and allowed AirPro to unfairly compete with Opus using Opus' own product.

(Doc. 24, p. 51, ¶139).    Similarly, in the Michigan Counterclaim, Defendants alleged in paragraph 57, as follows:

> 57.    AirPro's public statements regarding the Giotto Product were highly misleading to the marketplace and AirPro's customers and allowed AirPro to unfairly compete with Opus using Opus's own product.

(Ex. A, p. 30, ¶57).

As the Court can see, these paragraphs are almost identical.  This is seen throughout the Florida Counterclaim, as reflected in Exhibit B.  What's more is that the underlying theme in the Florida Counterclaim is Defendants' belief that AirPro has unfairly competed with Defendants and is misleading customers.  However, Defendants have already made these <u>same</u> <u>allegations</u> in the pending Michigan Counterclaim.  Defendants are apparently seeking the proverbial "second bite at the apple" by filing a new counterclaim in Florida based upon the same facts that underly their Michigan Counterclaim.  This is not permitted and should not be allowed.

Further, while Defendants did not allege a copyright infringement claim in the Michigan Counterclaim, to the extent Defendants desired to pursue this claim, Defendants could have, and should have, brought this claim in the Michigan Action.  Specifically, the allegations that Defendants now rely upon to support their copyright infringement claim were already known to Defendants in October 2023, when Defendants filed the Michigan Counterclaim.  This is because many of the same allegations now supporting Defendants' copyright infringement claim <u>were</u> <u>already</u> <u>alleged</u> in the Michigan Counterclaim.  (*See* Ex. B).

Finally, in addition to relying upon a large number of the same exact alleged facts to support the Florida Counterclaim, the Michigan Counterclaim pleads a cause of action for unfair competition (Count II) (Ex. A, p. 36).  The Florida Counterclaim also pleads a cause of action for unfair competition (Count III).  (*See* Doc. 24, pp. 62-65).  While the Florida Counterclaim also pleads a "new" cause of action for FDUTPA (Count IV), the Defendants rely upon the same facts and arguments (e.g.,

alleged misrepresentation and unfair competition) to support Defendants' unfair competition claim (Count II) in the Michigan Counterclaim. (*Compare* Ex. A, p. 36, ¶86, *with* Doc. 24, ¶¶212-13). Thus, the "unfair competition" and "misrepresentations" that Defendants allege in the Florida Counterclaim were already known to Defendants as is evident by allegations in the Michigan Counterclaim. (Ex. A, p. 36, ¶86).[6]

Simply put, the Florida Counterclaim is based on the same alleged facts, circumstances and wrongful acts that give rise to Defendants' Counterclaim in the Michigan Action. As such, the Florida Counterclaim should be dismissed for improperly splitting the causes of action.

### ii. *Defendants' Counterclaim in this Action is based on the same nucleus of operate facts as Defendants' Counterclaim in the Michigan Action.*

"Federal courts also recognize a prohibition against splitting of claims relating to the same transaction or occurrence." *Robbins v. Gen. Motors De Mexico, S. DE R.L. DE CV.*, 816 F.Supp.2d 1261, 1263 (M.D. Fla. 2011). The claim splitting rule "applies only 'where a second suit has been filed before the first suit has reached a final judgment,'" which is the situation presently before the Court. *See Watkins v. Elmore*, 745 Fed.App'x 100, 104 n.2 (11th Cir. 2018) (quoting *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 840 n.3 (11th Cir. 2017)). "Th[e] doctrine 'reflects that a district court, as part of its general power to administer its docket, has the authority to stay or dismiss

---

[6] AirPro vehemently denies Defendants' claims of alleged unfair competition, misrepresentations and misleading of customers.

a suit that is duplicative of another case then pending in federal court.'" *Robbins*, 816 F.Supp.2d at 1263-64 (quoting *Zephyr Aviation III, L.L.C. v. Keytech Limited*, No. 8:07–CV–227–T–27TGW, 2008 WL 759095 at *6 (M.D. Fla. Mar. 20, 2008)).

Similar to Florida's rule against splitting, the Eleventh Circuit's "rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Vanover*, 857 F.3d at 841 (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)). "The doctrine prevents a plaintiff from prosecuting a second suit 'before the first suit has reached a final judgment', promotes judicial economy, and shields parties from 'vexatious and duplicative litigation while empowering the district court to manage its docket.'" *Klayman v. Porter*, No. 22-13025, 2023 WL 2261814 at *3 (11th Cir. Feb. 28, 2023) (citation omitted). The Eleventh Circuit's test for improper claim splitting is as follows:

> To determine whether a plaintiff has improperly split his claims among lawsuits, we examine (1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions. . . . While this test borrows from the res judicata test, the question is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit.

*Id.* at *3 (citations omitted) (quotation marks omitted).

Here, the Michigan Action is still pending and a final resolution has not been reached. Additionally, the parties in the Florida Counterclaim are the same parties in

the Michigan Counterclaim (i.e., AirPro Diagnostics, LLC, Opus IVS, Inc. and AutoEnginuity LLC).[7]  Further, the instant Counterclaim and the Michigan Counterclaim arise from the same transaction or series of transactions.

Also, as explained in Part I(B) above, Defendants are alleging many of the same exact facts in the Florida Counterclaim that they alleged in the Michigan Counterclaim.  As demonstrated by the chart attached to this Motion as Exhibit B, over 50 of the allegations in the Florida Counterclaim are identical, or substantially similar, to the allegations in the Michigan Counterclaim.  (Ex. B). These facts relate to the same transaction or series of transactions that Defendants rely upon to support their Michigan Counterclaim.

Furthermore, the underlying theme in Defendants' Florida Counterclaim is that AirPro has allegedly unlawfully competed with Defendants, is allegedly misleading customers, and has allegedly improperly used the Giotto product in violation of Defendants' End User License Agreement (EULA).  (Doc. 24).  Defendants rely upon these same allegations and the same theme in their Michigan Counterclaim. (Ex. A).

Additionally, one strikingly similar case to the situation now before the Court is *Omnia Medical, LLC v. PainTEQ, LLC*, No. 8:22-cv-145-VMC-TGW, 2022 WL 3139241 at *2 (M.D. Fla. Aug. 5, 2022).  In *Omnia Medical, LLC*, a lawsuit was originally filed by PainTEQ against Omnia Medical.  *Id.* at *1.  Omnia Medical filed a counterclaim against PainTEQ alleging breach of contract, patent infringement,

---

[7] Defendants agree with this position.  (*See* Doc. 9, p. 14).

trademark infringement, unfair competition and copyright infringement. *Id.* Omnia Medical later sought leave to amend its counterclaim, which was denied. *Id.* Thereafter, Omnia Medical filed a separate lawsuit against PainTEQ and two of its agents. *Id.* at *2. Interestingly, the new lawsuit alleged twelve non-patent claims, four of which were underlined causes of action to the original counterclaim and used nearly identical wording as the counterclaim in the first action. *Id.* While PainTEQ argued that many of the facts were not discovered before the original counterclaim was filed, the Court rejected this argument pointing to a lack of case law suggesting that a motion to dismiss based on claim-splitting should be denied because the plaintiff could not timely discover and add new claims to an earlier pending action. *Id.* at *6. Additionally, the Court acknowledged that from the nearly identical claims pled in both pleadings, the alleged misconduct existed prior to the filing of the original counterclaim. *Id.* In sum, the Court found that the claims arose prior to the filing of the first action and therefore, the Court dismissed Omnia Medical's non-patent claims for improper claim-splitting. *Id.* at *7.

The *Omnia Medical, LLC* case is helpful in answering the question before this Court of whether Defendants have improperly split their claims. Here, each cause of action in the Florida Counterclaim arose prior to Defendants filing the Michigan Counterclaim (which was filed on October 12, 2023). For example, the majority of the factual allegations in the Counterclaim on their face include dates prior to October 12, 2023. (Doc. 24). Additionally, Count I (for copyright infringement) alleges that AirPro is liable for continuing to use the Giotto product after termination of the license

on October 25, 2021.  (Doc. 24, ¶151).  Count II (for unjust enrichment) alleges that AirPro retained benefits conferred by Defendants after the license termination (which is alleged to have occurred on October 25, 2021). (Doc. 24, ¶192).  Count III (for unfair competition), alleges that AirPro unfairly competed with Defendants by making misrepresentations after Defendants brought this alleged unfair competition and misrepresentations to AirPro's attention via a March 11, 2020 letter.  (Doc. 24, ¶¶106, 107, 136, 147, 148). Count IV (for FDUTPA) also alleges that AirPro has unfairly competed with Defendants and has misrepresented its product after Defendants brought this alleged unfair competition and misrepresentations to AirPro's attention via a March 11, 2020 letter.  (Doc. 24, ¶¶106, 107, 136, 147, 148).

Simply put, <u>each</u> of Defendants' four causes of action arose prior to the filing of the Michigan Counterclaim and each cause of action arises from the same transaction or series of transactions as the Michigan Counterclaim.  Therefore, the Florida Counterclaim should be dismissed for improper claim-splitting.

**C.    Defendants' Counterclaim should be dismissed because the Counterclaim is compulsory as it applies to the Michigan Action and Defendants were required to bring such claims in the Michigan Action.**

Rule 13(a) requires a pleading to state as a counterclaim any claim that arises out of the "transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a) (2025).

Similarly to the claim-splitting doctrine, the purpose of Rule 13(a) "is to prevent 'a multiplicity of actions,' waste of judicial resources, and unduly burdensome

14

litigation." *TM Brands, LLC v. Casa Dimitri Corp.*, No. 16-20850-CIV-WILLIAMS, 2016 WL 8813759 at *2 (S.D. Fla. Aug. 4, 2016) (citation omitted).

> To determine whether a counterclaim is compulsory, the Eleventh Circuit requires courts to determine whether the claim and counterclaim have a 'logical relationship.' A counterclaim has a 'logical relationship' to the original claim if: (1) the same aggregate of operative facts serves as the basis of both claims; or (2) the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant. Courts consider such factors as whether separate trials on each claim would involve a substantial duplication of effort and time by the parties and the court; whether the claims involve many of the same factual and/or legal issues; whether the claims are derived from the same basic controversy between the parties; and whether fairness, convenience, and economy support allowing the counterclaimant to maintain a separate lawsuit.

*Id.* (citing *Montgomery Ward Develop. Corp. v. Juster,* 932 F.2d 1378, 1381 (11th Cir. 1991) and *Revere Copper & Bros. Inc. v. Aetna Cas. & Sur. Co.,* 426 F.2d 709, 715 (5th Cir. 1970)).

In the instant case, Defendants' Florida Counterclaim should have been brought as a compulsory counterclaim in the Michigan Action. Defendants implicitly recognized this because Defendants brought the Michigan Counterclaim in the Michigan Action, which such counterclaim was compulsory as it arose out of the same operative facts. (*Compare* Doc. 9-2 *with* Ex. A). AirPro's claims in the Michigan Action as to Defendants were for unfair competition and tortious interference. (Doc. 9-2). Defendants' Michigan Counterclaim was for breach of contract and unfair competition. (Ex. A).

While Defendants could have brought the same claims they now bring in the Florida Counterclaim in the Michigan Action, Defendants' chose not to do so and chose not to seek to amend their Michigan Counterclaim. Such strategic decision was made by Defendants, and Defendants should not now be able to reverse course and try to bring such claims in this action. For these reasons, it is respectfully submitted that the Florida Counterclaim should be dismissed.

**D.    To the extent the Court declines to dismiss the Counterclaim for improper claims splitting and Defendants failing to bring the claims in the Michigan Action, Defendants' Counterclaim should be dismissed because the Counterclaim is an improper shotgun pleading.**

The allegations in a pleading "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A "shotgun pleading" is a pleading in which "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" and therefore the pleading does not comply with the standards of Rule 8. *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). The Eleventh Circuit in *Anderson* explained the importance of proper pleading:

> Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.

*Id.* at 367. In *Weiland v. Palm Beach Cty. Sheriff's Office*, the Eleventh Circuit identified the various categories of impermissible shotgun pleadings as follows:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. [(1)] The most common type—by a long shot—

<u>is a complaint containing multiple counts where each count</u>
<u>adopts the allegations of all preceding counts, causing each</u>
<u>successive count to carry all that came before and the last</u>
<u>count to be a combination of the entire complaint.</u> [(2)] <u>The</u>
<u>next most common type, at least as far as our published</u>
<u>opinions on the subject reflect, is a complaint that does not</u>
<u>commit the mortal sin of re-alleging all preceding counts but</u>
<u>is guilty of the venial sin of being replete with conclusory,</u>
<u>vague, and immaterial facts not obviously connected to any</u>
<u>particular cause of action.</u> [(3)] <u>The third type of shotgun</u>
<u>pleading is one that commits the sin of not separating into</u>
<u>a different count each cause of action or claim for</u>
<u>relief.</u> [(4)]Fourth, and finally, there is the relatively rare sin
of asserting multiple claims against multiple defendants
without specifying which of the defendants are responsible
for which acts or omissions, or which of the defendants the
claim is brought against. The unifying characteristic of all
types of shotgun pleadings is that they fail to one degree or
another, and in one way or another, to give the defendants
adequate notice of the claims against them and the grounds
upon which each claim rests.

792 F.3d 1313, 1321–23 (11th Cir. 2015) (numbering and emphasis added). The

*Weiland* Court acknowledged that a significant consideration is whether "a failure to

more precisely parcel out and identify the facts relevant to each claim materially

increased the burden of understanding the factual allegations underlying each count."

*Id.* at 1324.

i.    *Defendants' Counterclaim violates the first category of impermissible shotgun pleadings.*

Here, Defendants' Counterclaim incorporates <u>**all**</u> <u>**171**</u> <u>**initial**</u> <u>**paragraphs**</u> into each of its four causes of action. (*See* Doc. 24).  AirPro contends that this manner of pleading violates the first category identified in *Weiland.*

Each of Defendants' four counts incorporates the first 171 paragraphs. However, it is impossible for AirPro to decipher which specific facts out of the first 171 paragraphs Defendants contend actually give rise to, and support, each of Defendants' four causes of action.  Thus, while Defendants' Counterclaim does not *technically* incorporate every preceding paragraph and count into each subsequent count, the incorporation of 171 paragraphs into each count, without any clarity as to which paragraphs/allegations actually support each count, is greatly different than incorporating the first 49 paragraphs into each count, as was done in *Weiland*. Additionally, this pleading practice highlights the pleading problem identified in *Weiland*, to wit: whether "a failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count." 792 F.3d at 1324.  It is respectfully submitted that Defendants' failure to parcel out and identify the facts relevant to each claim materially increases the burden of understanding the factual allegations underlying each count.

This further complicates the issue when the allegations within the 171 paragraphs are replete with conclusory, vague and immaterial facts.  This leads us to the second category identified in *Weiland*.

### ii.      *Defendants' Counterclaim violates the second category of impermissible shotgun pleadings.*

Defendants' Counterclaim violates the second category identified in *Weiland*, because the Counterclaim is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  For example, paragraphs 52 to 68 of the Florida Counterclaim allege vague and immaterial facts relating to Defendants and Defendants' various businesses.  (*See* Doc. 24, ¶¶52-68).  Additionally, paragraphs 35 through 51 relate to copyright facts, but said facts are incorporated into each of the causes of action, even those that do not involve copyright infringement.  (*See* Doc. 24, ¶¶35-51). Moreover, paragraphs 90-100 relate to a completely separate lawsuit involving Ford Motor Company, in which Defendants were not parties, and which has nothing to do with the instant action.  (*See* Doc. 24, ¶¶90-100).

There are numerous other examples from a reading of the Counterclaim, where Defendants make blanket statements without any dates, timeframe or context (*see, e.g.*, Doc. 24, ¶¶15, 21, 87, 111, 138, 144), Defendants' opinions are interjected (*see, e.g.*, Doc. 24, ¶¶24, 25, 26, 27, 28, 158), and numerous facts are alleged "upon information and belief" likely in a strategic attempt to harass and harm AirPro's business in the marketplace (*see, e.g.*, Doc. 24, ¶¶158, 198, 201, 211, 212, 214).

###### iii.    *Defendants' Counterclaim violates the third category of impermissible shotgun pleadings.*

Additionally, Defendants' Counterclaim violates the third category identified in *Weiland*, because the Counterclaim does not separate into a different count each claim for relief. Instead, Defendants allege four separate causes of action and then lump all of the claims for relief into one section at the end of the pleading. This pleading style makes it extremely difficult (and in some cases impossible) for AirPro to decipher which relief Defendants are seeking in which count.

For example, paragraph 3 of Defendants' Prayer for Relief (Doc. 24, p. 69) states "under all of Opus' claims for relief, that a permanent injunction be issued . . ." (emphasis added). However, when explaining the injunctive relief sought, Defendants only reference infringing on Defendants' copyright (Count I) and violating FDUTPA (Count IV). (Doc. 24, pp. 69-70). Thus, AirPro is left wondering whether injunctive relief is being sought for unjust enrichment (Count II) and unfair competition (Count III). Similarly, paragraph 11 of Defendants' Prayer for Relief (Doc. 24, p. 72) seeks attorneys' fees, but does not identify the count in which fees are sought. While an unjust enrichment claim and a common law unfair competition claim would generally not give rise to a claim for attorneys' fees, are Defendants seeking to recover fees for those claims? Similarly, in paragraph 13 of Defendants' Prayer for Relief (Doc. 24, p. 72), Defendants request an equitable accounting and disgorgement of all revenues and/or profits realized by AirPro. However, Defendants do not explain under which cause of action Defendants are seeking to obtain an equitable accounting or

disgorgement. This is particularly problematic because in order to obtain an equitable accounting, a party must plead that a fiduciary relationship or a complex transaction exists, and that a remedy at law would be inadequate. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1071 (11th Cir. 2007). However, Defendants simply allege in a conclusory fashion that they want an equitable accounting but fail to plead the necessary elements. (*See* Doc. 24, p. 72).

Simply put, while paragraphs 4 through 8 of the Prayer for Relief (Doc. 24, pp. 70-72) are generally comprehensible, paragraphs 3 and 9 through 15 are not, and AirPro is not able to decipher to which cause of action each request for relief relates. Such challenge was highlighted by the *Weiland* Court, when it acknowledged that a significant consideration in whether a pleading is pled in a shotgun manner is whether the failure to more precisely parcel out and identify the facts relevant to each claim materially increases the burden of understanding the factual allegations underlying each count. *See Weiland*, 792 F.3d at 1324.

For the foregoing reasons, AirPro respectfully requests that the Court dismiss Defendants' Counterclaim.

21

II.    <u>Motion for More Definite Statement</u>

A.    **Legal Standard for a Motion for More Definite Statement.**

Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e) (2025). "A Rule 12(e) motion is appropriate if the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself]." *Ramirez v. F.B.I.*, No. 8:10–cv–1819–T–23TBM, 2010 WL 5162024 at *2 (M.D. Fla. Dec. 14, 2010) (citation omitted). Additionally, in *Anderson*, the Eleventh Circuit explained that when a party is faced with a shotgun pleading, the party may move the Court for a more definite statement. 77 F.3d 364, 366 (11th Cir. 1996).

B.    **A more definite statement is necessary in order for AirPro to properly respond to the Counterclaim.**

AirPro recognizes that motions for a more definite statement are generally disfavored by the District Court, and AirPro is mindful that such motions are not a substitute for discovery. *See Eye Care Int'l, Inc. v. Underhill*, 92 F. Supp. 2d 1310, 1316 (M.D. Fla. 2000) (noting that "motions for a more definite statement are not favored in light of the liberal discovery practice," and that "a motion for more definite statement is not to be used as a substitute for discovery"). However, in this particular case, Defendants' Counterclaim has been improperly pled and to the extent the Court

declines to dismiss the Counterclaim, at the very least a more definite statement is warranted.

As it is currently pled, the Counterclaim makes it extremely difficult for AirPro to respond in good faith to certain allegations, even with a simple denial without potentially prejudicing itself. Additionally, as explained above, the Counterclaim suffers from the following pleading irregularities:[8]

1. <u>Incorporation of all 171 initial paragraphs into each count</u>: Each of Defendants' four counts incorporates the first 171 paragraphs. However, it is impossible for AirPro to decipher which specific facts out of the original 171 paragraphs, actually give rise to, and support, each of Defendants' four causes of action. *See supra* Part I(D)(i).

2. <u>Inclusion of vague and immaterial facts</u>: The Counterclaim includes numerous vague and immaterial facts that do not appear to relate to any of the causes of action. (*See* Doc. 24, ¶¶35-51 (copyright facts are incorporated into non-copyright claims); ¶¶52-68 vague and immaterial); ¶¶90-100 (Ford). *See supra* Part I(D)(ii).

3. <u>Inclusion of conclusory and blanket statements without dates, timeframes or context</u>: The Counterclaim includes blanket statements without any dates, timeframe or context (*see, e.g.*, Doc. 24, ¶¶15, 21, 87, 111, 138, 144); Defendants' opinions are interjected (*see, e.g.*, Doc. 24, ¶¶24, 25, 26, 27, 28,

---

[8] Rather than include the same argument as alleged for dismissal based upon an improper pleading, AirPro incorporates by reference its argument in Parts I(D)(i)-(iii) above.

158); and numerous facts are alleged "upon information and belief" likely in a strategic attempt to harass and harm AirPro's business in the marketplace (*see, e.g.*, Doc. 24, ¶¶158, 198, 201, 211, 212, 214). *See supra* Part I(D)(ii).

4. <u>Failing to separate the Claims for Relief</u>: The Counterclaim does not separate into a different count each claim for relief. Instead, Defendants allege four separate causes of action and then lump all of the claims for relief into one section at the end of the pleading. *See supra* Part I(D)(iii).

For these reasons, AirPro seeks a more definite statement consisting of the following: (1) identifying the specific facts that give rise to and support each cause of action (instead of incorporating all 171 preceding paragraphs); (2) avoiding the conclusory and vague allegations that may not apply to any of the causes of action; (3) avoiding the conclusory and blanket statements that do not have dates, timeframes or context, and requiring Defendants to include dates and specifics regarding when the alleged unfair competition began; and (4) identifying the specific relief sought in each cause of action as opposed to lumping all claims for relief together at the end and making AirPro try to decipher which relief Defendants are seeking for each count.

## CONCLUSION

For the foregoing reasons, AirPro Diagnostics, LLC, respectfully requests that this Honorable Court enter an Order dismissing Defendants' Counterclaim. In the alternative, AirPro respectfully requests that the Court require Defendants to plead a more definite statement.

## LOCAL RULE 3.01(G) CERTIFICATION

The undersigned counsel hereby certifies that on July 1, 2025, via telephone, he conferred with counsel for Defendants regarding the relief requested in this Motion. Counsel for Defendants has indicated that Defendants do not consent to the relief requested in this Motion and intend to oppose this Motion.

> **LESAK, HAMILTON,
> CALHOUN & PONTIERI**
>
> By: _____
>   Austin T. Hamilton
>   Florida Bar No. 0099431
>   ahamilton@lesaklaw.com
>   Christopher M. Wittbrodt
>   Florida Bar No. 1025792
>   cwittbrodt@lesaklaw.com
>   8280 Princeton Sq. Blvd. W. Suite 1
>   Jacksonville, FL 32256
>   Telephone: (904) 895-5796
>   *Attorneys for AirPro Diagnostics, LLC*

## CERTIFICATE OF SERVICE

I CERTIFY that, on this 1st day of July, 2025, I served the foregoing document to all counsel of record by electronic mail to the e-mail addresses reflected below:

Patrick P. Coll
SMITH HULSEY & BUSEY
1 Independent Drive, Suite 3300
Jacksonville, Florida 32202
pcoll@smithhulsey.com
khettinger@smithhulsey.com
kackerman@smithhulsey.com
*Attorneys for Defendants / Counter-Plaintiffs*

T. Nelson Hughes, Jr.
Samuel A. Slater
WYRICK ROBBINS YATES
4101 Lake Boone Trail, Suite 300
Raleigh, North Carolina 27607
nhughes@wyrick.com
sslater@wyrick.com
*Attorneys for Defendants / Counter-Plaintiffs*

_____
Attorney